## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **BARBARA LONG,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **CIVIL ACTION NO. 2:20-00592-N** |
| | ) |
| **KILOLO KIJAKAZI,** *Acting* | ) |
| *Commissioner of Social Security*, | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Long brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 15, 16, 19) and those portions of the certified transcript of the administrative record (Doc. 14) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73,

## I.   *Procedural Background*

Long protectively filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on December 12, 2018. After they were initially denied, Long requested, and on June 3, 2020, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Hearings Operations. On June 30, 2020, the ALJ issued an unfavorable decision on Long's applications, finding her not entitled to benefits. (*See* Doc. 14, PageID.68-84).

The Commissioner's decision on Long's applications became final when the Appeals Council for the SSA's Office of Appellate Operations denied her request for review of the ALJ's unfavorable decision on November 18 2020. (*Id.*, PageID.57-61). Long subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may

---

and S.D. Ala. GenLR 73. (*See* Docs. 21, 23). With the Court's leave, the parties jointly waived the opportunity to present oral argument after briefing closed. (*See* Docs. 22, 24).

allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d

1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the

materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing]

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court

---

it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate").

with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)  (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921

(11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton,* 209 F.3d at 455)).

Relevant here, eligibility for DIB and SSI requires a showing that the claimant is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to

develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually

presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Long met the applicable insured status requirements for DIB through December 31, 2023, and that she had not engaged in substantial gainful activity since the alleged disability onset date of December 12, 2018.[7] (Doc. 14, PageID.73). At Step Two,[8] the ALJ determined that Long had the following severe impairments: peripheral neuropathy, essential hypertension,

---

[7] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

degenerative disc disease, and obesity. (Doc. 14, PageID.73-75). At Step Three,[9] the

ALJ found that Long did not have an impairment or combination of impairments that

met or equaled the severity of a specified impairment in Appendix 1 of the Listing of

Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 14, PageID.75).

At Step Four,[10] the ALJ determined that Long had the residual functional

---

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe
that it is likely they would be found disabled regardless of their vocational
background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525,
110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of
the claimant's impairment is compared to a list of impairments presumed severe
enough to preclude any gainful work … If the claimant's impairment matches or is
'equal' to one of the listed impairments, he qualifies for benefits without further
inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the
claimant's condition meets or equals the level of severity of a listed impairment, the
claimant at this point is conclusively presumed to be disabled based on his or her
medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity
> ("RFC"); and (2) the claimant's ability to return to her past relevant
> work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the
> regulations define RFC as that which an individual is still able to do
> despite the limitations caused by his or her impairments. 20 C.F.R. §
> 404.1545(a). Moreover, the ALJ will "assess and make a finding about
> [the claimant's] residual functional capacity based on all the relevant
> medical and other evidence" in the case. 20 C.F.R. § 404.1520(e).
> Furthermore, the RFC determination is used both to determine whether
> the claimant: (1) can return to her past relevant work under the fourth
> step; and (2) can adjust to other work under the fifth step…20 C.F.R. §
> 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will
> conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv)
> & (f). If the claimant cannot return to her past relevant work, the ALJ
> moves on to step five.

> In determining whether [a claimant] can return to her past relevant

capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[ [11] ] except occasional stooping and crouching[, and s]he is able to understand, remember, and carryout simple routine tasks involving 1 or 2 step instructions[;] is able to focus, concentrate, and attend for 2-hour periods[;] should have no climbing of ladders, ramps, scaffolds, and no left leg pushing or pulling[;] can have no contact with the public, occasional contact with supervisors, coworkers[;] and no unprotected heights." (Doc. 14, PageID.75-78). Based on this RFC and the

---

work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

testimony of a vocational expert,[12] the ALJ determined that Long was unable to perform any past relevant work. (Doc. 14, PageID.78).

However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy as a small parts assembler (196,000 jobs nationally), a shipping and receiving weigher (72,000 jobs nationally), and a textile checker (5,000 jobs nationally) that Long could perform given her RFC, age, education, and work experience. (*Id.*, PageID.78-79). Thus, the ALJ found that Long was not "disabled" under the Social Security Act. (*Id.*, PageID.79-80).

## IV.  *Analysis*

Long argues that the RFC is not supported by substantial evidence. Relatedly, Long also argues the ALJ reversibly erred in finding  that the medical opinions of Dr. Perry Timberlake were not supported by the record and were thus not persuasive. No reversible error has been shown.

"[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021). Medical opinions are one category of evidence the Commissioner considers in making disability

---

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

determinations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). The regulations define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … , including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "When a medical source provides one or more medical opinions … , [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c), 404.920c(c).

"The most important factors … are supportability … and consistency…" 20

C.F.R. §§ 404.1520c(a), 416.920c(a); *accord* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … , the more persuasive the medical opinion(s) … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions … in [the] determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions … in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions … about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[13]

---

[13] Long's brief cites prior Eleventh Circuit precedent indicating that the medical opinions of treating physicians are generally due special consideration. However, the Commissioner has promulgated new regulations that abrogated the "treating physician" rule for applications, such as the subject ones, filed on or after March 27, 2017, and the Eleventh Circuit has upheld the validity of those regulations. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 894-98 (11th Cir. 2022).

After summarizing the objective medical records and Long's subjective testimony regarding the limiting effects of her pain and other symptoms, the ALJ explained as follows:

> After a thorough review of the evidence, the undersigned finds that the claimant is capable of work at the light exertional level, and that her assertions of a complete inability to perform substantial gainful activity are not consistent with the preponderance of evidence of record. The undersigned recognizes that the claimant has some evidence of degeneration; however, the claimant's majority of the medical examinations show only some limitation in range of motion. She maintains a stable and normal gait with normal sensation. The claimant's activities of daily living include cooking, laundry, dusting, making the bed, and doing other household chores. She is able to drive and walk, and she grocery shops and goes to church (Exhibits 2F, 3F, 6F, and 13F). Her admitted activities of daily living, when viewed along with the other evidence of record, suggest the claimant's limitations are not as severe as alleged. Therefore, the undersigned finds that the claimant should be limited to work at the light exertional level. As stated above, the residual functional capacity adequately accommodates her impairments. For instance, she should not be required to climb ladders, ramps, or scaffolds, and she should have no left leg pushing or pulling. The claimant should also not be required to work around unprotected heights and should be able to occasionally stoop and crouch. While her pain may somewhat interfere with her ability to concentrate. the claimant has shown good judgment with a normal mood and affect during examinations (Exhibits 3F and 10F) which supports a finding that she is able to understand, remember, and carry out simple routine tasks involving 1 or 2 step instructions and that she is able to focus, concentrate, and attend for 2-hour periods of time. In fact, the claimant has demonstrated these abilities by cooking, driving, performing chores, following laundry instructions, and reading and watching television. Additionally, the claimant stated that she can follow instructions well (Exhibit 7E). She testified that she can only concentrate for 30 minutes at a time, but there is simply nothing in the record to support such a limitation. The claimant has reported that she does not handle stress well, but that she gets along with others well. In an effort to reduce

stress for the claimant and to reduce the chance of symptom exacerbation while allowing for fluctuations in pain levels, the undersigned finds that the claimant should have no contact with the general public, and should have only occasional contact with coworkers and supervisors.

(Doc. 14, PageID.77).

Among the evidence considered by the ALJ were two medical opinions provided by Dr. Timberlake, one dated December 17, 2018 (*id.*, PageID.806-807), the other April 10, 2020 (*id.*, PageID.839-840). The ALJ summarized those opinions as follows:

In December 2018, Dr. Timberlake opined that the claimant could sit for 2 hours and could stand or walk for 1 hour per day and could lift or carry up to 5 pounds occasionally. He further opined that the claimant should never bend, stoop, or reach and that the claimant should rarely push and pull. Additionally, he reported that the claimant [sic] rarely balance and climb ladders and stairs. He added that the claimant could occasionally use her hands for fine and gross manipulation and could occasionally drive or work around hazards. He estimated that the claimant would miss more than three days of work and had incapacitating pain (Exhibit 9F) … In April 2020, … Dr. Timberlake offered another opinion that was similar to his previous one, but this time he opined that the claimant would need an assistive device (Exhibit 12F).

(*Id.*, PageID.76-77).

The ALJ found Dr. Timberlake's opinions were "not persuasive" because they were "not supported by the medical evidence, which includes Dr. Timberlake's own treatment notes." (*Id.*, PageID.78). Long contends that Dr. Timberlake's opinion is well supported by the record, and that the ALJ's less limiting RFC is not. However, Long's arguments in support are unpersuasive.

Long claims that various anatomical abnormalities noted from two spinal

MRIs support Dr. Timberlake's opinions and a more limited RFC. While those abnormalities are useful for establishing that Long has medically determinable impairments, *see* 20 C.F.R. §§ 404.1521, 416.921, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. *Accord, e.g.*, *Proenza v. Comm'r of Soc. Sec.*, No. 20-14237, 2021 WL 3073777, at *3 (11th Cir. July 21, 2021) (per curiam) (unpublished) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work. Nor does it undermine the ALJ's determination that she can work." (citing *Moore*, 405 F.3d at 1213 n.6)).

Long also claims that "Dr. Timberlake's opinions are supported by his own examinations, which show tenderness in the lumbosacral area (Doc. 14, PageID.546, 564), inability to perform the straight leg raise test (Doc. 14, PageID.546), and halting gait. (Doc. 14, PageID.537)." (Doc. 16, PageID.865). Long fails to elaborate on how two instances of lumbosacral tenderness indisputably support Dr. Timberlake's opinions, or are otherwise indicative of disabling symptoms. As for the one instance each Long cites of a failed straight leg raise test, noted in December 2018, and a halting gait, noted in February 2019, the fact that she can point to some evidence in the record cutting against the ALJ's decision does not require reversal. An ALJ's factual determinations need only substantial evidentiary support to be upheld, even if the evidence preponderates against them. *See Ingram*, 496 F.3d at 1260.

Moreover, the ALJ's decision acknowledges instances in the medical record

whether Long's ambulation and range of motion were noted as being more limited than others. The ALJ specifically mentioned the December 2018 straight leg raise test (*see* Doc. 14, PageID.76 ("In December 2018, the claimant was unable to do straight leg raising testing due to pain.")), and acknowledged "both positive and negative straight leg raising" following the February 2019 examination. (*Id.*, PageID.77). However, the ALJ also noted that Long "had normal ambulation and normal sensation" at a September 2019 examination, and considered Long's reported activities of daily living, which included "cooking, laundry, dusting, making the bed, … doing other household chores[,]" driving, walking, grocery shopping, and going to church. (*Id.*).[14] While recognizing that Long "has some evidence of degeneration[,]" the ALJ ultimately concluded that the "majority of the medical examinations show only some limitation in range of motion[,]" and that Long "maintains a stable and normal gait with normal sensation." (Doc. 14, PageID.77). Long has failed to persuade the undersigned that the ALJ's conclusions are not reasonable and supported by at least substantial evidence.

Long also claims the notes of Dr. Wesley Spruill (Doc. 14, PageID.769-800),

---

[14]    Long asserts that the exhibits the ALJ cited after noting her activities of daily living "are medical records that do not address whether she cooks, does laundry, dusts, makes the bed, does household chores, drives, walks, shops, or goes to church." (Doc. 16, PageID.867). However, she acknowledges that such activities were included in her Functional Report that was elsewhere in the record. Thus, the ALJ's scrivener error in citing to the wrong exhibit numbers for her activities of daily living does not warrant reversal.

Long also quibbles with how the ALJ weighed some of her reported activities of daily living, but she fails to convince the undersigned that this amounts to anything more than inviting the Court to impermissibly reweigh the evidence or substitute its judgment for the ALJ's. *See Winschel*, 631 F.3d at 1178.

who treated Long with a series of injections from mid-May to early July of 2018, represent "aggressive medical treatments" that further support Dr. Timberlake's opinions. However, the mere fact that a claimant receives treatment for her impairments does not compel a finding that the claimant cannot work because of them. On the contrary, a "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quotation omitted). And nothing in Dr. Spruill's notes indicates that the injection treatment was unsuccessful; indeed, Long was noted to "tolerate the procedures well." (Doc. 14, PageID.770-771, 774-775). While Long later complained to Dr. Timberlake on December 17, 2018, that she "has had all the nerve blocks from spine care that she can get and still almost constant daily severe LBP into left leg" (*id.*, PageID.546 (changed to lowercase)), as explained above, the ALJ reasonably determined that the record did not support the existence of disabling pain.[15]

---

[15] Long has also argued that the ALJ ignored Dr. Spruill's records entirely, and thus reversibly erred by failing to "consider all evidence in [his] case record" before making a disability determination, as the regulations require. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). It is true that the ALJ did not specifically cite or discuss Dr. Spruill's records; however, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision…" *Dyer*, 395 F.3d at 1211. While ALJs must analyze all evidence, they are generally only required to explain the weight given to "obviously probative exhibits." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (quotation omitted). As Long acknowledges, Dr. Spruill's records spanned a period from mid-May to early July of 2018, with the latest note dated over five months before Long's alleged December 12, 2018 disability onset date. While Dr. Spruill's early notes do contain some diagnostic impressions, these appear to be based largely on Long's own statements and records provided by other physicians, and the ALJ considered medical records from other sources from around the same period. (*See* Doc. 14, PageID.76 (discussing treatment records from May and August 2018)). Otherwise,

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Long's applications for benefits is due to be **AFFIRMED**.

### V.    *Conclusion & Order*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Long's December 12, 2018 DIB and SSI applications is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

A final judgment consistent with this opinion and order shall issue separately under Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of September 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

Dr. Spruill's notes largely document the course of the injection treatment he provided, without providing any further insight on Long's impairments. Overall, Long has failed to show that the ALJ erred in not specifically addressing Dr. Spruill's notes.